# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JACK DANIEL'S PROPERTIES, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br><br>ATOMIC DOG, LLC, a Delaware limited liability company doing business as Atomic Dog Cidery LLC; and ATOMIC DOG LLC, a Pennsylvania limited liability company,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, FEDERAL TRADEMARK DILUTION, BREACH OF CONTRACT, TENNESSEE UNFAIR COMPETITION, TENNESSEE TRADEMARK DILUTION, COMMON LAW TRADEMARK INFRINGEMENT, AND COMMON LAW UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jack Daniel's Properties, Inc. ("JDPI" or "Plaintiff"), for its complaint against Atomic Dog, LLC, a Delaware limited liability company doing business as Atomic Dog Cidery LLC, and Atomic Dog LLC, a Pennsylvania limited liability company (collectively, "Atomic Dog" or "Defendant"), alleges, upon personal knowledge with respect to itself and its acts and on information and belief as to all others, as follows.

### Nature of Action

1.     Jack Daniel's Tennessee Whiskey is one of the oldest, longest-selling, and most iconic consumer products in American history. The JACK DANIEL'S trademark is famous, and Jack Daniel's Tennessee Whiskey has been named the most valuable spirits brand in the world. From the original JACK DANIEL'S trademark to JACK-formative marks such as JACK, GENTLEMAN JACK, WINTER JACK, BLACK JACK, JACK FIRE, and JACK HONEY,

18674723.1

among others, JDPI has built up widespread goodwill and consumer recognition across a range of beverage alcohol products.

2.      This action arises from a dispute between JDPI and Atomic Dog concerning Atomic Dog's ongoing and repeated acts of trademark infringement and efforts to cause consumer confusion with Jack Daniel's Tennessee Whiskey and family of related beverage alcohol products. Many years ago, JDPI informed Atomic Dog's predecessor-in-interest, a producer of hard alcoholic cider, that its JACK'S HARD CIDER product was likely to cause consumer confusion with the famous JACK DANIEL'S trademark for whiskey and related beverage alcohol products. To resolve the matter, the parties entered into a settlement agreement executed in 2013 which allowed for Atomic Dog's predecessor to continue to produce and sell JACK'S HARD CIDER with critical guardrails designed to avoid consumer confusion—including but not limited to prominent use of a depiction of an individual named Jack Hauser, the claimed inspiration behind the JACK'S HARD CIDER name, as well as prominent and consistent use of the HAUSER ESTATE trademark, the house mark of Atomic Dog's predecessor-in-interest—all in close proximity to uses of JACK'S HARD CIDER.

3.      Atomic Dog, aware of its inherited contractual obligations with JDPI to avoid consumer confusion, nevertheless designed, produced, and sold JACK'S HARD CIDER in cans that followed virtually none of the clear contractual obligations present in the settlement agreement. Rather, Atomic Dog stripped away the prominent connection to its predecessor-in-interest Hauser Estate and the individual named Jack Hauser, and produced a beverage alcohol product that placed great emphasis on the "JACK'S" portion of its trademark. Atomic Dog's JACK'S HARD CIDER branded products, when encountered by consumers on store shelves, are highly likely to lead to confusion with JDPI's well-known products sold under the JACK

-2-

18674723.1

DANIEL'S brand, including ready-to-drink whiskey beverages sold in cans. To protect its valuable trademark rights, JDPI brought its concerns to Atomic Dog's attention. Thereafter the parties attempted to resolve the present dispute, but ultimately a mutually satisfactory agreement could not be reached.

4.     Atomic Dog's conduct constitutes both breach of contract and trademark infringement and dilution under federal and state law. JDPI is left with no choice but to bring this action to protect its invaluable trademark rights and consumer goodwill that have developed for over a century.

## Parties

5.     Plaintiff JDPI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Rafael, California. Jack Daniel's Tennessee Whiskey has been produced in this District since at least 1875, except during Prohibition.

6.     Defendant Atomic Dog, LLC is a limited liability company organized and existing under the laws of the State of Delaware, doing business as Atomic Dog Cidery LLC, and with its principal place of business in Gettysburg, Pennsylvania. On information and belief, the members of Atomic Dog, LLC are citizens of Pennsylvania.

7.     Defendant Atomic Dog LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Gettysburg, Pennsylvania. On information and belief, the members of Atomic Dog, LLC are citizens of Pennsylvania.

8.     On information and belief, Atomic Dog, LLC and Atomic Dog LLC are the agent or alter ego of each other, operate as a common enterprise, or share a unity of interest and ownership.

-3-

**Jurisdiction and Venue**

9.      This is an action for infringement of federally-registered trademarks in violation

of 15 U.S.C. § 1114(1); for infringement of trademarks in violation of 15 U.S.C. § 1125(a)(1);

for dilution of trademarks in violation of 15 U.S.C. § 1125(c); for trademark infringement under

Tennessee law and common law; for trademark dilution under Tennessee law; for unfair

competition under Tennessee law; for unjust enrichment under Tennessee common law; and for

breach of contract. The Court has subject-matter jurisdiction over Plaintiff's claims for relief

arising under the United States Trademark Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C.

§ 1338(a). The Court has original or supplemental jurisdiction over the subject matter of

Plaintiff's claims for relief under state law pursuant to 28 U.S.C. §§ 1338(b) and 1367.

Additionally, the Court has subject-matter jurisdiction over Plaintiff's claims for the additional

reason that this is an action between citizens of different states in which the value of the amount

in controversy exceeds $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332.

10.     The Court has personal jurisdiction over Atomic Dog because it does business in

Tennessee by, among other things, selling products in this District, including the unlawful

products at issue in this action. On information and belief, Atomic Dog purposefully caused the

unlawful products to be sold to distributors in Tennessee and elsewhere for resale by retailers in

Tennessee, including within this District.

11.     Further, on information and belief, Atomic Dog committed tortious acts within the

State of Tennessee, or has committed tortious acts without the State of Tennessee and regularly

does or solicits business, engages in other persistent courses of conduct, or derives substantial

revenue from products sold or offered in the State of Tennessee and derives substantial revenue

from interstate commerce. In addition, JDPI has been injured in this District.

-4-

18674723.1

12.     Further, this Court has personal jurisdiction under Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq*., because, on information and belief, 1) Atomic Dog has transacted business in Tennessee; 2) the tortious acts or omissions occurred in Tennessee; and 3) jurisdiction based on Atomic Dog's contacts with Tennessee (including, but not limited to, sales of products) is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because Atomic Dog is considered to reside in this District, or because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District.

### Allegations Common to All Claims for Relief

*Jack Daniel's JACK Trademarks*

14.     Plaintiff JDPI owns and licenses the use of trademarks used in connection with Jack Daniel's Tennessee Whiskey and other Jack Daniel's beverage alcohol products. Tennessee whiskey has been produced in this District and sold in the United States under the JACK DANIEL'S mark continuously since at least 1875, except during Prohibition, making Jack Daniel's Tennessee Whiskey one of the oldest, longest-selling, and reportedly most iconic consumer products in American history.

15.     Since long prior to the commencement of Atomic Dog's acts of infringement, dilution, unfair competition, and breach of contract complained of herein, and continuously to the present, Jack Daniel's Tennessee Whiskey has been sold under the JACK DANIEL'S mark and promoted and marketed under the trademark JACK, including but not limited to with the following trade dress:

18674723.1



16.     JDPI also licenses the use of the JACK DANIEL'S mark and certain JACK-formative marks, including but not limited to JACK, GENTLEMAN JACK, WINTER JACK, BLACK JACK, JACK FIRE, and JACK HONEY, among others, in connection with distilled spirits and beverage alcohol generally, as well as related merchandise. For example, for over three decades, the JACK DANIEL'S trademark has been used in connection with a ready-to-drink beverage alcohol product called JACK DANIEL'S COUNTRY COCKTAILS. Because of the wide variety of beverage alcohol products sold under JDPI's trademarks, consumers have come to recognize JACK and JACK-formative marks as an indicator of the source for a broad range of beverage alcohol products.

17.     JDPI owns numerous federal registrations for the JACK DANIEL'S and JACK-formative marks for distilled spirits, whiskey, fruit-flavored beverage alcohol products, prepared cocktails with beverage alcohol, and other beverage alcohol products, as well as a wide variety

18674723.1

of related merchandise. These include, but are not limited to, the following United States

trademark registrations, many of which are incontestable:

| U.S. Reg. No. | Mark | Goods |
| --- | --- | --- |
| 582789 | **JACK DANIEL'S** | Whiskey |
| 1538377 | GENTLEMAN JACK | Whisky |
| 1923981 | JACK DANIEL'S | Whiskey |
| 2026758 | JACK DANIEL'S MASTER DISTILLER | Whiskey |
| 2209684 | JACK DANIEL'S SILVER SELECT | Alcoholic beverages, namely whiskey |
| 2572051 | JACK LIVES HERE | Alcoholic beverages, namely distilled spirits |
| 2624566 | *Jack Daniel* | Alcoholic beverages, namely distilled spirits |
| 2789278 |  | Alcoholic beverages, namely, Tennessee sour mash whiskey |
| 2795048 | JACK DANIEL | Alcoholic beverages, namely distilled spirits |
| 2815221 | JACK | Alcoholic beverages, namely whiskey |
| 3259938 | BLACK JACK | Alcoholic beverages, namely, pre-mixed alcoholic cocktails |
| 3297091 | GENTLEMAN JACK | Distilled spirits |
| 3297092 | GENTLEMAN JACK RARE TENNESSEE WHISKEY | Distilled spirits |
| 3576142 | JD | Alcoholic beverages, namely, distilled spirits |
| 4106179 |  | Alcoholic beverages, namely, distilled spirits |

-7-

18674723.1

| U.S. Reg. No. | Mark | Goods |
|---|---|---|
| 4168845 | JACK DANIEL'S ORIGINAL RECIPE Tennessee HONEY | Distilled spirits |
| 4404637 | WINTER JACK | Alcoholic beverages, namely, pre-mixed alcoholic cocktails |
| 4511173 | JACK HONEY | Distilled spirits |
| 4652135 | Jack Daniel | Distilled Spirits |
| 4740015 | JACK DANIEL'S TENNESSEE FIRE | Alcoholic beverages except beers |
| 5478634 | JACK DANIEL'S GENTLEMAN JACK DOUBLE MELLOWED · TENNESSEE WHISKEY | Alcoholic beverages, except beer |
| 5680795 | JACK DANIEL'S ORIGINAL RECIPE Tennessee FIRE | Cinnamon-flavored whiskey |
| 5984451 | JACK DANIEL'S TENNESSEE TASTERS' | Alcoholic beverages, except beer |
| 6076253 | JACK DANIEL'S ORIGINAL RECIPE Tennessee APPLE | Alcoholic beverages, including distilled spirits |
| 6153677 | JACK DANIEL'S | Alcoholic bitters |
| 6165199 | JACK DANIEL'S FRESH TASTE SERVE COLD Southern CITRUS | Prepared alcoholic cocktail |

-8-

18674723.1

| U.S. Reg. No. | Mark | Goods |
|---|---|---|
| 6195501 | JACK BY NAME. HONEY BY NATURE. | Alcoholic beverages, except beer |
| 6228202 | JACK FIRE | Distilled Spirits |
| 6355663 | JACK DANIEL'S | Alcoholic beverages except beers |
| 6364253 | JACK DANIEL'S TENNESSEE APPLE | Alcoholic beverages except beers |
| 6380051 | JACK DANIEL'S TENNESSEE HONEY | Alcoholic beverages except beers |
| 6576611 | JACK DANIEL'S COUNTRY COCKTAILS | Alcoholic beverages, except beer; Alcoholic mixed beverages, except beers; Alcoholic fruit-flavored beverages except beer; Alcoholic carbonated beverages, except beer |
| 6655020 | JACK DANIEL'S TENNESSEE TRAVELERS | Alcoholic beverages, except beers |
| 6686743 | GENTLEMAN JACK | Alcoholic beverages, except beer |
| 6686792 | **JACK** | Alcoholic beverages, namely, whiskey and mixed alcoholic cocktails containing whiskey |
| 6686793 | JACK | Alcoholic beverages, namely, mixed alcoholic cocktails containing whiskey |
| 6686953 | JACK DANIEL'S DOWNHOME PUNCH | Flavored malt-based alcoholic beverages, excluding beers; Alcoholic fruit-flavored beverages, except beer |
| 6704457 |  | Alcoholic beverages, except beer; Alcoholic mixed beverages, except beer; Alcoholic fruit-flavored beverages |
| 6704458 |  | Alcoholic beverages, except beer; Alcoholic mixed beverages, except beer; Alcoholic fruit-flavored beverages |

Copies of the valid and subsisting certificates of registration of these marks are attached hereto as

**Exhibit 1.** All of these JACK-formative marks create a "family" of JACK marks (collectively,

the "JACK Trademarks")

18674723.1

18.     JDPI and its predecessors-in-interest and licensees have expended many hundreds of millions of dollars over many decades advertising and promoting beverage alcohol products offered under the JACK Trademarks in the United States. Such advertising and promotion have taken place in the print and electronic media, over the internet, on billboards, on stadium signage, in film and television productions, through branded bars and restaurants, and in a variety of other manners and media. For example, the primary print advertising campaign for Jack Daniel's Tennessee Whiskey, which has prominently featured the JACK Trademarks, commenced in 1955 and has continued since then, making the campaign one of the longest continuous consumer advertising campaigns in American history. Beverage alcohol products featuring the JACK Trademarks have been seen in numerous motion pictures and television programs viewed by many millions of Americans, and have also received extensive unsolicited media coverage and public exposure as the unofficial drink of choice of celebrities such as Frank Sinatra.

19.     JDPI's predecessors-in-interest and licensees have achieved billions of dollars in sales of beverage alcohol products under the JACK Trademarks. Jack Daniel's Tennessee Whiskey is currently reported to be the best-selling whiskey in the United States, and the JACK DANIEL'S brand has consistently been ranked among the world's most successful and valuable beverage alcohol brands. In the most recent Interbrand annual report of the "Best Global Brands 2021," the JACK DANIEL'S brand was ranked as the most valuable spirit brand in the world.

20.     The JACK Trademarks are famous in the United States for whiskey, distilled spirits, and beverage alcohol, and they became famous long prior to Atomic Dog's acts of infringement, dilution, unfair competition, and breach of contract alleged herein. The JACK

18674723.1

DANIEL'S trademark has been adjudicated famous in the United States within the meaning of 15 U.S.C. § 1125(c)(2)(A).

*Infringement of the JACK Trademarks and the Settlement Agreement*

21.     In or about 2010, JDPI became aware that Hauser Estate, Inc., a Pennsylvania corporation doing business as Hauser Estate Winery ("Hauser"), had been selling an alcoholic hard cider (the "Accused Product") under the mark "JACK'S HARD CIDER" (the "JACK'S HARD CIDER Mark"). On January 22, 2010, Hauser filed U.S. application serial no. 77917903 to register the JACK'S HARD CIDER Mark in connection with "alcoholic beverages, except beer; hard cider." Hauser's use of and application for the JACK'S HARD CIDER Mark was in the following stylization:



22.     On information and belief, Hauser was founded by Jonathan Patrono as an homage to his grandfather, Jack Hauser, whose name formed the inspiration for the JACK'S HARD CIDER Mark. Jack Hauser was occasionally depicted as shown in the following image:



23.     Upon publication for opposition by the United States Patent and Trademark Office, JDPI filed extensions of time to oppose the application for the JACK'S HARD CIDER Mark and communicated its concerns to Hauser that its use of the mark in the above stylization on the Accused Product created a likelihood of consumer confusion with JDPI and the JACK Trademarks. On October 20, 2010, Hauser voluntarily abandoned the application to register the JACK'S HARD CIDER Mark.

24.     JDPI and Hauser executed a settlement agreement effective September 18, 2013 (the "Settlement Agreement") limiting Hauser's use of the JACK'S HARD CIDER Mark on the Accused Product.

25.     In the Settlement Agreement, Hauser agreed, among other things, to the following terms:

- not to use the marks JACK DANIEL'S, JACK, or any JACK-formative marks in connection with any beverage alcohol products except for the JACK'S HARD CIDER Mark as restricted by the Settlement Agreement;

- not to use any of JDPI's trade dress associated with Jack Daniel's whiskey, **or any elements thereof**;

- to use the JACK'S HARD CIDER mark **only** in connection with hard cider;

- to always use "Hauser Estate" in close proximity to all uses of JACK'S HARD CIDER, "on all products, packaging, advertising, and promotional materials and merchandise, including on its website at jackshardcider.com and in any social media";

- to always use a depiction of Jack Hauser in close proximity to all uses of JACK'S HARD CIDER, "on all products, packaging, advertising, and promotional

-12-

18674723.1

materials and merchandise, including on its website at jackshardcider.com and in any social media"; and

- not to use the mark JACK alone without the words HARD CIDER "in the advertising, marketing, and promotion of hard cider … including on its website and in any social media."

26.     The Settlement Agreement provides that the agreement is "binding upon, and shall inure to the benefit of, the parties' respective successors, licensees, and assigns."

27.     The Settlement Agreement was executed on behalf of Hauser by Jonathan Patrono, its President. On information and belief, Mr. Patrono remains an executive of Atomic Dog to date.

*Atomic Dog and its JACK'S HARD CIDER Packaging*

28.     Subsequent to the Settlement Agreement, Atomic Dog acquired either Hauser, substantially all of its assets, or both. Atomic Dog is the successor-in-interest to Hauser.

29.     Pursuant to the Settlement Agreement, as the successor-in-interest to Hauser, Atomic Dog is bound by the terms of that agreement.

30.     JDPI became aware that Atomic Dog had introduced to the market substantially updated packaging for the Accused Product sold under the JACK'S HARD CIDER Mark, representative but non-exhaustive examples of which include:

-13-

18674723.1

  

(the "JACK'S HARD CIDER Cans").

31.     Atomic Dog additionally expanded its use of JACK'S on a standalone basis and stripped away all references to and depictions of the HAUSER ESTATE trademark or Jack Hauser, in breach of the Settlement Agreement and in a manner that is likely to cause consumer confusion. For example, Atomic Dog operates physical retail and taproom locations branded in some places as "Jack's Cider House" and other places as simply "Jack's." In further breach of the Settlement Agreement, Atomic Dog makes extensive use of "JACK'S"—separate from "HARD CIDER"—on its website located at www.jackshardcider.com (the "Infringing Website"), including but not limited to the following use of "FIND JACK'S":

18674723.1





Atomic Dog's Infringing Website lacked and continues to lack any reference to the HAUSER ESTATE trademark or a depiction of Jack Hauser, as required by the Settlement Agreement.

32. Further, Atomic Dog's social media accounts on Instagram, Facebook, and elsewhere, upon which Atomic Dog extensively advertises the Accused Product, prominently promotes the JACK'S HARD CIDER Cans. Atomic Dog consistently failed and continues to fail to make any reference to the HAUSER ESTATE trademark or include a depiction of Jack Hauser in virtually all of its promotional posts on these and other social media platforms, as required by the Settlement Agreement.

33. JDPI and Atomic Dog advertise and promote their respective products in the same marketing channels. Likewise, they distribute and sell their products in the same channels of trade to the same classes of customers. Both the Accused Product sold under the JACK'S HARD

CIDER Mark and beverage alcohol products sold under the JACK Trademarks are members of the same overlapping category of beverage alcohol. They are sold in the same retail stores, including stores in this District, as shown below:





34.    Additionally, Atomic Dog operates and transacts business through the interactive Infringing Website, through which Atomic Dog accepts and processes orders of its products, including to residents of Tennessee and this District, as shown below:





35.     Through its interactive Infringing Website and brick and mortar retailers, Atomic Dog transacts business in this District by selling and accepting and processing orders of its products, including, without limitation, the Accused Product.

36.     The Infringing Website was designed to form contacts with potential customers, including residents of this District, through which Atomic Dog invites potential customers to "Sign … up for the newsletter!" by submitting their contact information to receive future contact by Atomic Dog.

37.     Atomic Dog was certainly aware of JDPI and the famous JACK Trademarks when it designed and produced the JACK'S HARD CIDER Cans. Among other things, the JACK Trademarks are broadly famous. Additionally, under federal law, Atomic Dog is presumed to have constructive notice of the JACK Trademarks by virtue of the associated federal

-17-

18674723.1

registrations. And, in any event, Atomic Dog is the successor-in-interest to the Settlement

Agreement with JDPI. On information and belief, Mr. Patrono, who negotiated and signed the

Settlement Agreement, became and remains an executive of Atomic Dog. On information and

belief, Atomic Dog intentionally and willfully adopted the JACK'S HARD CIDER Cans to trade

upon the goodwill embodied in the JACK Trademarks.

38.     Atomic Dog's production and sale of Accused Product in the JACK'S HARD

CIDER Cans constitutes not only breach of the express terms of the Settlement Agreement but

also infringement of the JACK Trademarks. Specifically, consumers of the parties' respective

products are likely to believe that they come from the same source, or otherwise share a common

sponsorship or affiliation. Atomic Dog's use of the JACK'S HARD CIDER Cans in connection

with the Accused Product, and the merchandising thereof, is likely to cause consumers and

prospective purchasers of Atomic Dog's products to mistakenly believe that they originate with

or are licensed, endorsed, authorized, or sponsored by the owner of the JACK Trademarks.

Consumers and prospective purchasers may mistakenly believe that there is a business

relationship, affiliation, connection, or association between Atomic Dog and the owner of the

JACK Trademarks.

39.     Atomic Dog's use of the JACK'S HARD CIDER Cans is also likely to dilute the

famous JACK Trademarks by blurring. The similarities between the parties' products have

impaired, and will continue to impair, the distinctive quality of the JACK Trademarks in the

marketplace.

40.     Through discussions between JDPI and Atomic Dog, JDPI pointed out that the

updated packaging is both infringing and not compliant with the Settlement Agreement because

it: includes neither a reference to Hauser Estate nor a depiction of Jack Hauser, both of which are

18674723.1

required by the Settlement Agreement; uses JACK'S on a standalone basis in violation of the Settlement Agreement, because the phrase "Pressed-On-Site" separates "JACK'S" from "HARD CIDER"; uses elements of JDPI's trade dress, in particular a black can that imitates the Jack Daniel's Trade Dress; and is used with a product evidently other than hard cider, such as a "rosé" beverage. Additionally, JDPI raised its concerns that Atomic Dog was failing to abide by its marketing and social media obligations to refer consistently to the HAUSER ESTATE trademark and include a depiction of Jack Hauser in close proximity to all uses of JACK'S HARD CIDER, and that these omissions were leading to consumer confusion.

41. Although JDPI attempted to amicably resolve the dispute surrounding Atomic Dog's infringing use of the JACK'S HARD CIDER Mark, such efforts were unsuccessful. Atomic Dog has continued and persisted in its unlawful use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans. Since it became clear that a mutually satisfactory agreement could not be reached, and that Atomic Dog would not cease its infringement of JDPI's trademark rights or breach of contract, JDPI has no choice but to bring this action.

**First Claim for Relief**
(*Infringement of Federally-Registered Trademarks; 15 U.S.C. § 1114(1)*)

42. JDPI repeats and realleges the above allegations as if fully set forth herein.

43. Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein constitutes the use in commerce, on or in connection with Atomic Dog's goods, of reproductions, copies, or colorable imitations of JDPI's federally registered trademarks for the JACK Trademarks, which is likely to cause confusion, to cause mistake, or to deceive, in violation of § 32(1) of the United States Trademark Act, 15 U.S.C. § 1114(1).

-19-

18674723.1

44. Atomic Dog's willful and deliberate infringement of JDPI's federally-registered trademarks as alleged herein has caused and is likely to continue to cause substantial injury to the public and to JDPI, and JDPI is entitled to injunctive relief and its attorneys' fees and costs under §§ 32, 34, 35, and 36 of the United States Trademark Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

45. Atomic Dog's infringement of JDPI's federally-registered trademarks as alleged herein has caused and is likely to continue to cause irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its infringement, thereby causing JDPI further irreparable harm.

46. JDPI has no adequate remedy at law.

**Second Claim for Relief**
*(Trademark Infringement in Violation of Federal Law; 15 U.S.C. § 1125(a))*

47. JDPI repeats and realleges the above allegations as if fully set forth herein.

48. Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein constitutes infringement of the JACK Trademarks through use in commerce, in connection with Atomic Dog's goods, of a combination of symbols or devices that is likely to cause confusion, or to cause mistake, or to deceive, as to the origin, sponsorship, or approval of Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans and commercial activities with or by JDPI, in violation of § 43(a)(1) of the United States Trademark Act, 15 U.S.C. § 1125(a)(1).

49. Atomic Dog's willful and deliberate infringement of the JACK Trademarks as alleged herein has caused and is likely to continue to cause substantial injury to the public and to

18674723.1

JDPI, and JDPI is entitled to injunctive relief and its attorneys' fees and costs under §§ 32, 34, 35, and 36 of the United States Trademark Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

50.　　Atomic Dog's infringement of the JACK Trademarks as alleged herein has caused and is likely to continue to cause irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its infringement, thereby causing JDPI further irreparable harm.

51.　　JDPI has no adequate remedy at law.

**Third Claim for Relief**
(*Dilution of JACK Trademarks in Violation of Federal Law; 15 U.S.C. § 1125(c)*)

52.　　JDPI repeats and realleges the above allegations as if fully set forth herein.

53.　　Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein is likely to cause dilution by blurring and by tarnishment of the JACK Trademarks, which became famous in Tennessee and throughout the United States before Atomic Dog commenced its use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans, by eroding the public's exclusive identification of the famous JACK Trademarks with JDPI, lessening the capacity of the famous JACK Trademarks to identify and distinguish the goods and services sold under and connection with them, and otherwise harming the reputation of said trademarks and trade dress, in violation of § 43(c) of the United States Trademark Act, 15 U.S.C. § 1125(c).

54.　　On information and belief, Atomic Dog willfully and deliberately intended to trade on the reputation and goodwill of the JACK Trademarks, or to cause dilution of the JACK Trademarks.

18674723.1

55.     Atomic Dog has diluted and is likely to continue to dilute the distinctiveness of the famous JACK Trademarks, and JDPI is entitled to injunctive relief and its attorneys' fees and costs under §§ 34, 35, 36, and 43(c) of the United States Trademark Act, 15 U.S.C. §§ 1116, 1117, 1118, and 1125(c).

56.     Atomic Dog's dilution of the JACK Trademarks as alleged herein has caused and continues to cause irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its dilution, thereby causing JDPI further irreparable harm.

57.     JDPI has no adequate remedy at law.

### Fourth Claim for Relief
*(Breach of Contract)*

58.     JDPI repeats and realleges the above allegations as if fully set forth herein.

59.     JDPI and Hauser entered into a valid contract in the Settlement Agreement. Pursuant to the terms of that contract, Atomic Dog, as Hauser's successor-in-interest, is bound by the terms of the Settlement Agreement.

60.     Atomic Dog materially breached the Settlement Agreement by, among other things, producing and selling the Accused Product using the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans, in violation of § 1 of the Settlement Agreement. Atomic Dog has admitted that it is bound by the Settlement Agreement.

61.     Atomic Dog's breach of the Settlement Agreement has caused irreparable harm to JDPI and damages in an amount to be established at trial. Unless restrained and enjoined by this Court, Atomic Dog's conduct will persist, thereby causing JDPI further irreparable harm and damages.

62.     JDPI has no adequate remedy at law.

18674723.1

**Fifth Claim for Relief**

*(Unfair Competition and Violation of Tennessee Consumer Protection Act; Tenn. Code Ann.*
*§ 47-18-104(b))*

63.     JDPI repeats and realleges the above allegations as if fully set forth herein.

64.     Atomic Dog's offering of the Accused Product as alleged herein constitutes the offering of or providing of "goods" and constitutes "trade," "commerce," and a "consumer transaction" as defined in Tenn. Code Ann. § 47-18-103(7) and (19).

65.     Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein constitutes infringement of the JACK Trademarks through use in commerce, in connection with Atomic Dog's goods, of a combination of symbols or devices, a false designation or origin that is likely to cause confusion, or to cause mistake, or to deceive, as to the origin, sponsorship, or approval of Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans and commercial activities with or by JDPI, in violation of Tenn. Code Ann. §§ 47-18-104(b)(2), (b)(3), (b)(5).

66.     Atomic Dog's acts, including its use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein, violate Tenn. Code Ann. § 47-18-104(b)(21).

67.     Atomic Dog's willful and deliberate infringement of the JACK Trademarks as alleged herein has caused and is likely to continue to cause substantial injury to the public and to JDPI, and JDPI is entitled to injunctive relief and all other available statutory remedies, including an award of three times the actual damages sustained under Tenn. Code Ann. § 47-18-109(a) and its attorneys' fees and costs under Tenn. Code Ann. § 47-18-109(e).

18674723.1

68.     Atomic Dog's infringement of the JACK Trademarks as alleged herein has caused and is likely to continue to cause irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its infringement, thereby causing JDPI further irreparable harm.

69.     JDPI has no adequate remedy at law.

**Sixth Claim for Relief**
(*Dilution of JACK Trademarks in Violation of Tennessee Law; Tenn. Code Ann. § 47-25-513*)

70.     JDPI repeats and realleges the above allegations as if fully set forth herein.

71.     Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product in commerce in Tennessee as alleged herein began long after the JACK Trademarks became well-known, distinctive, and famous in Tennessee and throughout the United States, and dilutes the distinctive quality of the JACK Trademarks or causes a likelihood of injury to JDPI's business reputation in violation of Tenn. Code Ann. § 47-25-513.

72.     On information and belief, Atomic Dog willfully and deliberately intended to trade on the reputation and goodwill of the JACK Trademarks, or to cause dilution of the JACK Trademarks.

73.     Atomic Dog has diluted and is likely to continue to dilute the distinctiveness of the famous JACK Trademarks, and JDPI is entitled to injunctive relief and its attorneys' fees and costs under Tenn. Code Ann. §§ 47-25-513(b), 47-25-514(a).

74.     Atomic Dog's dilution of the JACK Trademarks as alleged herein has caused and continues to cause irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its dilution, thereby causing JDPI further irreparable harm.

-24-

18674723.1

75.     JDPI has no adequate remedy at law.

**Seventh Claim for Relief**
(*Common Law Trademark Infringement and Unfair Competition*)

76.     JDPI repeats and realleges the above allegations as if fully set forth herein.

77.     Atomic Dog's use of the JACK'S HARD CIDER Mark and the JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product as alleged herein constitutes infringement of the JACK Trademarks and unfair competition at common law.

78.     Products sold under JDPI's JACK Trademarks, and the JACK'S HARD CIDER products sold by Atomic Dog, are competitors and compete for a common pool of customers.  As alleged herein, Atomic Dog has engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Tennessee common law.

79.     Atomic Dog is liable to JDPI for unfair competition under Tennessee law, because Atomic Dog's conduct is tortious and has deprived JDPI's authorized licensees of customers and other prospects.

80.     Atomic Dog's acts of trademark infringement and unfair competition as alleged herein have caused JDPI damages, and JDPI seeks judgment for Atomic Dog's profits made by Atomic Dog's trademark infringement and unfair competition, for the damages sustained by JDPI, for all costs necessary to remediate the trademark infringement and unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Atomic Dog's actions.

81.     JDPI further seeks judgment for punitive damages of at least three times the amount of Atomic Dog's profits or JDPI's damages, whichever is greater, due to the nature of Atomic Dog's willful conduct.

18674723.1

82.     Atomic Dog's trademark infringement and unfair competition as alleged herein has caused irreparable harm to JDPI. Unless restrained and enjoined by this Court, Atomic Dog will persist in its trademark infringement, trade dress infringement, and unfair competition as alleged herein, thereby causing JDPI further irreparable harm.

83.     JDPI has no adequate remedy at law.

### Eighth Claim for Relief
*(Common Law Unjust Enrichment)*

84.     JDPI repeats and realleges the above allegations as if fully set forth herein.

85.     Atomic Dog's willful and knowing acts, including its use of JDPI's JACK Trademarks, permitted Atomic Dog to procure customers that it otherwise would not have been able to obtain.

86.     JDPI has conferred a benefit, directly or indirectly, upon Atomic Dog through Atomic Dog's use of the JACK'S HARD CIDER Mark and JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product in commerce.

87.     Atomic Dog has received appreciable benefits from using the JACK'S HARD CIDER Mark and JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product in commerce.

88.     It is inequitable for Atomic Dog to retain the benefits of the use of the JACK'S HARD CIDER Mark and JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product in commerce, including, but not limited to, monetary and reputational benefits and value of JDPI's famous JACK Trademarks.

-26-

89. Atomic Dog's acts have caused JDPI damages such that monetary and injunctive remedies are appropriate.

90. Atomic Dog has been unjustly enriched by virtue of its use of the JACK'S HARD CIDER Mark and JACK'S HARD CIDER Cans in the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Product in commerce, to the detriment of JDPI, as well as consumers in the marketplace.

91. Atomic Dog's actions have been made willfully and knowingly.

92. Atomic Dog's acts have caused JDPI damages and unjustly enriched Atomic Dog as alleged herein.

93. JDPI is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Atomic Dog's profits, enhanced damages, and costs.

## Prayer for Relief

Plaintiff JDPI prays for judgment as follows:

1. That the Court enter a judgment in favor of JDPI and against Atomic Dog as to all causes of action alleged herein;

2. That Defendant Atomic Dog, LLC, doing business as Atomic Dog Cidery LLC, and Defendant Atomic Dog LLC and their respective owners, agents, servants, employees, and attorneys, and all other persons in active concert or participation with it who receive actual notice of the injunctions prayed for herein by personal service or otherwise, be preliminarily and then permanently restrained and enjoined from:

   2.1. Manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing the Accused Product bearing the JACK'S HARD CIDER Mark, using the JACK'S HARD CIDER Cans;

-27-

2.2.    Manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any other beverage alcohol bearing the JACK'S HARD CIDER Mark or using the JACK'S HARD CIDER Cans, or any other copy, reproduction, or colorable imitation of JDPI's registered trademarks, or any other mark or trade dress that is confusingly similar thereto;

2.3.    Manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any other beverage alcohol that dilutes the distinctiveness of the famous JACK Trademarks; and

2.4.    Doing any other act or thing that is likely to cause persons to believe that Atomic Dog's goods or commercial activities originate with or are licensed, sponsored, or authorized by JDPI;

3.      That Atomic Dog be ordered, pursuant to 15 U.S.C. § 1116, to file with the Court and to serve on counsel for JDPI, within 30 days after the entry of judgment herein, a written report under oath setting forth in detail the manner in which it has complied with the injunction ordered by the Court;

4.      That Atomic Dog be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition all labels, signs, prints, packages, wrappers, receptacles, and advertisements and promotional materials showing bearing the JACK'S HARD CIDER Mark or using the JACK'S HARD CIDER Cans, and all plates, molds, matrices, and other means of making the same;

5.      That Atomic Dog be ordered, pursuant to 15 U.S.C. § 1117(a), Tenn. Code Ann. § 47-18-101 *et seq.*, Tenn. Code Ann. § 47-25-501 *et seq.*, and Tennessee common law, to account for and pay to JDPI all of its profits from the sale of the Accused Product bearing the

18674723.1

JACK'S HARD CIDER Mark or using the JACK'S HARD CIDER Cans, and that such profits be enhanced on the basis of its willful infringement of JDPI's federally-registered marks, willful infringement of the Jack Daniel's Trade Dress, and willful unfair competition;

6.      That Atomic Dog be ordered, pursuant to 15 U.S.C. § 1117(a), Tenn. Code Ann. § 47-18-101 *et seq.*, Tenn. Code Ann. § 47-25-501 *et seq.*, and Tennessee common law, to pay to JDPI all damages sustained by JDPI as a result of its infringement, unfair competition, and breach of contract, and that such award be trebled on the basis of its willful infringement of JDPI's federally-registered marks, willful infringement of the JACK Trademarks, and willful unfair competition;

7.      That this Court award JDPI punitive or treble damages in an amount no less than three times the amount of Atomic Dog's profits or JDPI's damages, whichever is greater, due to the wanton, egregious, willful, deliberate, intentional, or malicious nature of their actions;

8.      That the Court determine that this matter is an "exceptional case," and accordingly that Atomic Dog be ordered, pursuant to 15 U.S.C. § 1117(a), Tenn. Code Ann. § 47-18-101 et seq., and Tenn. Code Ann. § 47-25-501 et seq., to pay to JDPI its attorneys' fees and the costs and expenses of this action;

9.      That Atomic Dog be liable for any award of monetary damages, treble damages, punitive damages, costs, and attorney fees;

10.     That pre-judgment and post-judgment interest be awarded to JDPI; and

11.     That JDPI be granted such other and further relief as the Court may deem just and proper.

JDPI demands a trial by jury on all issues so triable.

Dated this 24th day of June, 2022.

18674723.1

Respectfully submitted,

ADAMS AND REESE LLP

/s/ Maia T. Woodhouse
Maia T. Woodhouse, TN BPR No. 030438
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Tel: (615) 259-1085
Fax: (615) 780-0016
Email: maia.woodhouse@arlaw.com

HANSON BRIDGETT LLP

Raffi V. Zerounian (*pro hac vice to be filed*)
rzerounian@hansonbridgett.com
Justin P. Thiele (*pro hac vice to be filed*)
jthiele@hansonbridgett.com
777 S Figueroa Street, Suite 4200
Los Angeles, California 90017
Telephone:     (213) 395-7632

Garner K. Weng (*pro hac vice to be filed*)
gweng@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200

*Attorneys for Plaintiff Jack Daniel's Properties,
Inc.*

-30-

18674723.1